TENENBAUM v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. February 10, 1926.)

No. 4528.

1. Post office ⊜⇒48(4)—Indictment charging use of mails to defraud, by establishing financial credit, excessive buying, cut price cash resales, and bankruptcy, held sufficient, without setting forth in hæc verba letter mailed, or alleging falsity thereof (Criminal Code, § 215 [Comp. St. § 10385]).

In prosecution under Criminal Code, § 215 (Comp. St. § 10385), for using mails to defraud, by establishing financial standing, followed by excessive buying, cut price cash resales, and bankruptcy, indictment charging the fraudulent scheme and mailing of a sufficiently identified letter in furtherance thereof held sufficient, without setting forth letter in hæc verba or alleging falsity of its statements.

2. Criminal law ⊜⇒1186(4)—Overruling demurrer to indictment on ground, among others, that it did not state offense, and sustaining it as to particular paragraph, held equivalent to overruling it generally and sustaining motion to strike out paragraph, and not prejudicial to defendant (Judicial Code, § 269, as amended February 26, 1919 [Comp. St. Ann. Supp. 1919, § 1246]).

Overruling demurrer to indictment for using mails to defraud on ground, among others, that it did not state an offense, and sustaining it as to particular paragraph, held equivalent to overruling demurrer generally, and sustaining motion to strike out particular paragraph as surplusage, and not prejudicial to defendant's rights, or reversible error, under Judicial Code, § 269, as amended February 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246).

3. Post office ⊜⇒48(4)—Indictment charging use of mails to defraud by establishing financial standing, followed by excessive buying, cut price cash resales, and bankruptcy, held sufficient on demurrer (Cr. Code, § 215; Comp. St. § 10385).

Indictment under Cr.Code, § 215 (Comp. St. § 10385), charging use of mails to defraud by establishing financial standing, followed by excessive buying, cut price cash resales, and bankruptcy, and the mailing of a letter pursuant thereto, held sufficient on demurrer.

4. Post office ⊜⇒49—Testimony as to letter received by trade mercantile agency held competent in prosecution for use of mails to defraud, by establishing financial standing, excessive buying, cut price cash resales, and bankruptcy (Criminal Code, § 215 [Comp. St. § 10385]).

In prosecution under Criminal Code, § 215 (Comp. St. § 10385), for use of mails to defraud, by establishing financial standing followed by excessive buying, cut price cash resales, and bankruptcy, testimony of employé or officer of trade mercantile agency concerning letter received by it from defendant through the mail held competent.

5. Criminal law ⊜⇒1043(2), 1054(1).

Objection to evidence must be specific, and exception to court's ruling taken, before error can be predicated thereon.

6. Post office ⊜⇒48(8)—In prosecution for use of mails in furtherance of scheme to defraud, government is not limited to proof only of mailing of letter alleged in indictment (Criminal Code, § 215 [Comp. St. § 10385]).

In prosecution under Criminal Code, § 215 (Comp. St. § 10385), for use of mails in furtherance of scheme to defraud, government is allowed great latitude in proving fraudulent scheme, and is not confined to proof only of mailing of letter alleged in indictment.

7. Post office ⊜⇒48(8)—In prosecution for use of mails in furtherance of scheme to defraud, by procuring financial standing, followed by excessive buying, cut price cash resales, and bankruptcy, letter containing language in addition to that alleged in indictment held admissible.

In prosecution for use of mails in furtherance of scheme to defraud, by procuring finan-

cial standing, followed by excessive buying, cut price cash resales, and bankruptcy, letter containing language in addition to that alleged in indictment *held* admissible.

8. **Post office ⬯49—In prosecution for use of mails to defraud, by procuring financial standing, excessive buying, cut price cash resales, and bankruptcy, evidence of letter passing between third persons, containing statement that defendant had given addressee's name as reference, held admissible.**

In prosecution for use of mails in furtherance of scheme to defraud, by procuring financial standing, followed by excessive buying, cut price cash resales, and bankruptcy, testimony concerning receipt of letter by firm with which defendant had dealt, inquiring as to defendant's financial standing, and stating that such firm's name had been given as a reference, *held* properly admitted.

In Error to the District Court of the United States for the Southern District of Georgia; Wm. H. Barrett, Judge.

Michael Tenenbaum was convicted of using the mails in furtherance of a scheme to defraud, and he brings error. Affirmed.

Thomas F. Walsh, of Savannah, Ga., for plaintiff in error.

F. G. Boatright, U. S. Atty., and Chas. L. Redding, Asst. U. S. Atty., both of Savannah, Ga..

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. An indictment in seven counts was returned against plaintiff in error, Michael Tenenbaum, hereafter called defendant, and one S. Biyden, charging them with fraudulent use of the mail in violation of section 215, Criminal Code (Comp. St. § 10385). The indictment is prolix and redundant, but, briefly stated, the scheme charged, with slight variations in the different counts, is this:

Biyden and Tenenbaum were to open up a wholesale and retail shoe store in Savannah, Ga., under the name of the Southern Shoe Company, and to establish a reputation for honesty and financial worth by ordering shoes from various persons named in the indictment, and by paying for same promptly for a time, and then to order large quantities of shoes, and sell them quickly for cash, regardless of cost, and convert the money to their own use, without paying their creditors, in contemplation that they would be forced into bankruptcy, and there would be no assets with which to meet their liabilities. As a part of the means for carrying out the scheme, the indictment alleges that it was the intent of defendants, after establishing a rep-utation for honesty and fair dealing, to secure a favorable rating from the commercial agencies of Bradstreet and Dun and the Shoe and Leather Mercantile Agency, knowing that persons contemplating extending credit to them would ask for credit reports from said agencies, and to that end to send statements showing their financial condition to said agencies.

A demurrer was sustained as to three counts, and defendant was convicted on only the fourth count, which, in addition to the general scheme above outlined, charged that it was the intent and purpose of defendants to furnish prospective creditors with financial statements as a basis of credit, which would be substantially truthful, and containing the names of a few concerns with whom defendants had done business in the past, which names were to be furnished for the purpose of having the prospective creditors consult said firms, in expectation that a favorable report would be returned.

The indictment charges in this count that the scheme was to defraud Hamburger Bros. Shoe Company, of Boston, Mass., and other persons unknown, and charges the mailing of a statement to said firm, which statement purports to be set out in substance, and on the back of which was the following: "Buy goods from the following firms: Progress Shoe Company, New York, N. Y.," and four other names unnecessary to mention. Then followed the allegation that "said statement was false and fraudulent, in that it represented defendant's liabilities to be only $7,000 indebtedness to a bank or banks, whereas in truth and in fact said defendants were indebted to a bank or banks in the sum of $11,000, and had notes receivable and discounts at a bank or banks in the sum of $5,212.67." The allegation of falsity went further in other particulars, but it is unnecessary to set it out.

The demurrer to this particular count of the indictment was divided into seven paragraphs; the first that the indictment set forth no offense against the laws of the United States, and the fifth a criticism of the charge of falsity of the statement regarding the item as to notes receivable and discounted at a bank or banks in the sum of $5,212.67. The court sustained the fifth ground of demurrer to this count, and all other grounds were overruled. As the first paragraph of the demurrer charged that the indictment did not allege an offense, the action of the court was tantamount to overruling the demurrer, although the ruling is somewhat novel in a criminal case, and one that has not hereto-

fore come to our notice. Error is assigned to the overruling of the demurrer.

[1-3] After having charged the fraudulent scheme and the mailing of the letter in furtherance of it, it was not incumbent upon the pleader to set forth the letter in hæc verba, provided it was sufficiently identified, nor was it necessary to allege the falsity of any of its statements. Wilson v. U. S. (C. C. A.) 275 F. 307. That part of the indictment may be considered surplusage. The effect of sustaining the fifth paragraph of the demurrer, at most, was sustaining a motion to strike out a part of this surplusage. We think the demurrer should have been overruled in its entirety. The action of the court in sustaining part and overruling part of it did not affect the substantial rights of defendant, and reversible error is not shown. Judicial Code, § 269, amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246).

Errors are assigned to the admission of evidence as follows:

[4-6] In the course of the trial the government introduced as a witness one Johnson, an employee or officer of the Shoe and Leather Mercantile Agency. He gave testimony identifying certain statements as having been received from defendant through the mail. Defendant objected to the testimony after it had been given, and objected to the statements introduced in evidence. These objections were overruled, and subsequently he moved to strike out the evidence and the documents. The bill of exceptions does not disclose any specific grounds of objection to this evidence.

It is elementary that, in objecting to evidence, the grounds of objection must be stated, and an exception noted to the action of the court in ruling on the objection, before error can be predicated thereon. Noonan v. Caledonia Mining Co., 7 S. Ct. 911, 121 U. S. 393, 30 L. Ed. 1061. It is well settled that, in proving a fraudulent scheme, great latitude is allowed, and the government is not confined to showing only the letters alleged in the indictment to have been mailed. There is no doubt that the statements were material to some of the counts of the indictment on trial; in fact, they tended to prove, not only the scheme generally, but the mailing of letters set out as overt acts.

[7] In proving up the mailing of the letter charged in the fourth count, it developed that the document offered contained this clause, in addition to the verbiage set out in the indictment: "Since that time there has been no material unfavorable change in my [our] financial condition and if any takes place I

[we] will give you notice." Defendants objected to this on the ground that it was irrelevant and immaterial, but they did not object to it on the ground of variance. It is quite evident that the statement was relevant, and the variance is immaterial, as it was not necessary in the first place to set the letter out in hæc verba.

[8] In the course of the trial the government introduced one Rosenfield as a witness. He testified to the receipt of a letter from Rice & Hutchens of Baltimore by the Progress Shoe Company of New York, which letter stated the name of the Progress Shoe Company had been given as a reference. Defendant objected to this. The objection urged to this was that any communication between third persons was irrelevant and immaterial, and not binding on the defendants. No other ground of objection was stated. What has been said above as to the necessity of stating the grounds of objection applies with equal force here. The letter was material, and was not inadmissible on any of the grounds urged.

At the close of the case defendant moved for a directed verdict, which was denied. To this error is also assigned. There was sufficient evidence before the jury to support the verdict. It was not error to overrule the motion.

The other assignments of error are without merit, and need not be specifically referred to. We find no reversible error in the record.

Affirmed.